## CIRCUIT COURT OF CLARKE COUNTY

Stella Chapman Sealock

v.

Howard Lee Sealock

January 13, 1971

By JUDGE ROBERT K. WOLTZ

The defendant in this divorce suit was sentenced to the penitentiary for statutory rape in the early 1950's. In 1963 while he was a parolee, apparently for the second time, from this sentence, he and the complainant were married. In 1967 he was reincarcerated for parole violation. More than two years after this reincarceration and while it continued to exist, the complainant instituted this suit praying for divorce on the ground stated in § 20–91(9), Code 1950 as amended, which in pertinent part provides, "A divorce from the bond of matrimony may be decreed: (9) On the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for two years. A plea of *res judicata* or recrimination with respect to other provisions of this section shall not be a bar to either party obtaining a divorce on this ground . . . ." Presumably, at the time of marriage, the complainant knew of the defendant's previous conviction, or at least there is no allegation to the contrary, nor is the divorce sought on the ground of Section 20–91(4) where prior to marriage, a party without the knowledge of the other has been convicted of an infamous offense.

The defendant as a convict appears by guardian *ad litem*. The evidence, duly corroborated as required by statute, establishes the existence of the ground for divorce asserted, though the complainant has seen the defendant three times on visiting day during his present incarceration. Routine visitation of a spouse incarcerated in a penal institution by the other spouse can neither constitute cohabitation

nor an interruption of their living separate and apart as contemplated by the statute.

The integrity of the family has over the span of history been to states in large variety a matter of prime importance in the ordering of their domestic — that is to say, internal — affairs. So basic has the family as a social unit been thought to the health and vitality of the body politic, and so bound up has it been with religious, moral, economic and other values of the social structure, that government has devoted much care and concern to its maintenance and preservation, to the legal conditions and means of rending it and, upon its disruption legal or otherwise, to remedial measures respecting its separated parts. As a consequence in our jurisprudence, these matters involving the most private and intimate relationship of citizen or subject have become highly charged with considerations of public policy and divorce, as a part of this area of concern, is no exception.

In Virginia as in Anglo-American jurisdictions generally, the grounds for divorce until recently have been limited to those founded upon some actual or constructive culpability. This culpability in its various forms was of such a nature as to be, in legislative contemplation, destructive of the practical essence binding partners to each other in the conjugal state. And so the marriage ties having by the culpability of one party been loosed or destroyed in point of fact, the relationship could in point of form be materially lessened in the case of *a mensa* divorce or sundered in the case of *a vinculo* divorces by the other party through invocation of law.

Reflective of changing social modes and mores, in 1960 the legislature crossed the great divide between culpability and lack of culpability as substantive criteria for the granting of divorces by adding Subsection (9) in its original form to § 20-91. By thus establishing a three-year period of separation without cohabitation or interruption as a ground, for the first time it became possible to obtain a divorce without allegation or proof of legal "fault" on the part of the defendant. If any inference of fault by either party inhered in the mere fact of such separation, it would not be destructive of the existence of the ground.

Even so there remained the possibility of a bar to a suit on this new ground by plea of *res judicata*, which is discussed in *Hagen v. Hagen*, 205 Va. 791 (1965), and likewise, the possibility of a successful defense against such a suit by pleading recrimination involv-

ing the eight pre-existing grounds, all importing culpability, found in the statute. No appellate decision in this Commonwealth relates to the later possibility prior to first amendment of subsection (9). In 1962 the legislature laid these two possibilities to rest by adding to the subsection the provision concerning *res adjudicata* and recrimination.[1] The effect of this amendment was to make a divorce available to either spouse where they had lived apart for the time and in the manner required "regardless of fault, on the theory that society will be better served by terminating marriages in law which have ceased to exist in fact. *Canavos v. Canavos*, 205 Va. 744, 747 (1965).

The subsection at its inception did not define or qualify the separation required except as to purely physical characteristics, that is, its length, its lack of cohabitation, and its uninterruptedness (and its requirement, since repealed, as to residence and domicile of the parties at the time of separation, if that be considered such a qualification). The 1962 amendment concerning *res adjudicata* and recrimination was no so much a qualification on the separation as a reaffirmation that its physical characteristics were sufficient and that the ground was not to be defeated by matters extrinsic to the latter.

Yet in *Crittenden v. Crittenden*, 210 Va. 76 (1969), involving a separation with the required physical characteristics, a separation resulting from the commitment of the defendant for mental illness, the court held that the separation contemplated "must be of parties who are sufficiently competent to be conscious of the fact that the separation has occurred."[2] This case further held that, "While a separation in divorce law often occurs as the result of the unilateral act of one party, the consciousness of the other party that such separation has occurred is essential under the statute here involved." Thus certain non-physical characteristics were attached to the separation contemplated, though the same case acknowledges that such words

---

[1] The 1962 amendment further liberalized the subsection by omitting the requirement that both parties have been resident and domiciled in the State at the time of separation and the prohibition against granting divorce on this ground where service of process was by publication.

[2] By amendment of the statute in 1970, effective after the institution of this suit, as a result of the Crittenden decision, the legislature provided that insanity of either party either before or after commencement of the separation would not be a bar to obtaining a divorce on the ground of the separation of required length, etc.

as "voluntary" or "mutual" are not used in the statute nor did it contain any specific exception to separations resulting from commitment of a party for mental incompetence.

Thus the court has recognized that the mere physical separation specified is not standing alone necessarily effective to constitute ground for divorce under the statute in all situations. The legislature on the other hand, as evidenced by the several provisions of the 1964 amendment and by the 1970 amendment, has shown some intent to eliminate all matters extraneous to the bare physical separation. This does not mean necessarily that in some circumstances there are not additional qualifications on the separation.

To see if any such qualifications exist or are applicable to defeat the divorce in this case, a categorization of separations according to their geneses and specifically with regard to the act and actor initiating them may shed light. The following catalogue while not exhaustive covers the majority of situations.

Marital separations occur as the result of the unilateral act of one of the spouses. The first instance of this is where the spouse separating bears the culpability. The typical example is desertion. The second instance is where the separating spouse bears no culpability. A typical situation is separation resulting from cruelty. A third instance is separation without fault on either spouse. Volunteering for military service is an example of this. It happened many times in World War II that a volunteer was posted beyond the seas for a period greater than two years without any interruption in the separation and without any cohabitation. Quaere, when it occurs from laudable motive is such a separation ground for divorce, by either party, and what of the situation — surely not unknown — in which the volunteer, prima facie, acts out of sentiment of patriotism and duty, but whose true motive and intent is to break off the marital relation in order to escape its responsibilities or the harridan left at home.

The second classification is where the separation results from the joint act of the parties. This is typically where the spouses, for any number of reasons but neither will legally justifiable reason, separate by mutual agreement. Though formerly this situation would not, on grounds of policy, admit of divorce, it is one typical of those in which by the change of policy effected by § 20–91(9), the legislature now permits "terminating marriages in law which have ceased to exist in fact." *See also, Bartach v. Bartach*, 204 Va. 462, 469 (1963),

noting that as a consequence of the statute obtaining absolute divorce on the basis of separation is not now contrary to Virginia public policy.

The next classification is where the separation results from the act of a third party. An instance of this happening without fault on the part of and perhaps even against the will of the separating spouse is his draft into military service. A second instance by act of third party can occur where there is a culpability of the separating spouse, but the separation is against his will and intent. Examples of this are incarceration for crime,[3] or revocation of probation on a suspended sentence, or as in the case at bar, revocation of parole.

Other instances of separation may fit rather well into one of the foregoing classifications or, depending upon the particularities of the case, might not fit so neatly or might require an independent classification. For example, separation resulting from commitment of a spouse for mental illness might reside comfortably in the same grouping with draft into the armed forces; or depending on circumstances and views as to causation, it might not be so congenial there, or where the non-separating spouse initiated the commitment even require distinct classification under separation due to joint act of that spouse and a third party. Another example in this indeterminate area is posed by former subsection (5) of the statute which provided for divorce from the bond of matrimony "where either party charged with an offense punishable with death or confinement in the penitentiary has been indicted, is a fugitive from justice, and has been absent for two years."

The above classification of separation helps to place the facts of this case in better legal perspective and focuses on the central issue here, namely, whether under these circumstances, this involuntary

---

[3] Section 20–91(3) already provided divorce on the ground of sentence subsequent to the marriage to confinement in a penitentiary of this State, of any other state of the United States or of the United States, but apparently, the infamy involved is the predominant consideration in such cases and the separation at most a secondary matter as no period of separation which might result is specified, though one year is the minimum for penitentiary sentences in this State. Further, an equivalent sentence to jail, as opposed to penitentiary sentence, of twelve months for a misdemeanor is permissible in this State, and perhaps sentences of less than a year to penitentiaries of the other named jurisdictions are permissible.

separation for a period greater than two years without cohabitation and without interruption affords ground for divorce under Section 20–91(9).

Brushing aside the fact that the subsection in terms does not deal with intent, motive, voluntariness or mutuality, and the fact that culpability is related to this ground in only an indirect way,[4] it is my opinion that the complainant is entitled to a divorce on the ground of this separation.

Prior to the adoption of subsection (9), § 20–91 had long contained three grounds for divorce related to general criminal activity but without naming specific criminal offenses.[5]

Subsection (3), adverted to already by way of footnote, allows divorce where, subsequent to the marriage, a spouse has been sentenced to penitentiary confinement. Subsection (4) grants divorce where a spouse prior to the marriage and without knowledge of the other has been convicted of an infamous offense. Former subsection (5), now repealed, allowed divorce where a spouse had been indicted for a serious offense, was a fugitive from justice, and had absented himself for two years. With that strong history of divorce grantable on the basis of the offending spouse's criminal culpability, and with the radically liberalizing divorce provisions in subsection (9), it is difficult to see how the legislature in enacting the last subsection did not contemplate that a separation under the circumstances at hand would not be covered by its provisions. Those circumstances do not fit any of those other three subsections, but in light of them and of

---

[4] "Culpability" is still very much of a live matter under subsection (9) in relation to the obligation to support the wife, both by decision, see Mason v. Mason, 209 Va. 528 (1969), and by confirmatory legislation as indicated by the last portion of the 1970 amendment providing that granting of divorce pursuant to the subsection "shall in no way lessen any obligation a husband may otherwise have to support his wife unless he shall prove that there exists in his favor some other ground of divorce under this section."

[5] Two other sections make reference to sepcific criminal acts. Subsection (1) makes adultery, sodomy, and buggery grounds for divorce, and subsection (2) gives the husband the right to divorce where the wife prior to the marriage and without his knowledge has been a prostitute. Subsection (7) affords him the right where, at the time of marriage, the wife was pregnant without his knowledge by someone other than himself, but this does not necessarily import either adultery or fornication as conception could have occurred legitimately with a former spouse of hers.

subsection (9), those circumstances create a case which perforce is placed under the aegis of the later provision.

This interpretation becomes more conclusive in view of the 1964 actions of the legislature. First, the period of separation under subsection (9) was reduced from three to two years. Second, subsection (5) concerning absence for two years as an indicted fugitive was repealed. So long as the separation period in subsection (9) remained at three years, subdivision (5) served a useful purpose. But when the legislature reduced the subsection (9) separation period to two years, then in the repeal of the two-year fugitive provision, its intent became clear that that latter type of separation was to be includable as a separation contemplated under subsection (9).

If such a fugitive-type separation is now so included, then no policy ground exists for not also so including a separation of the required physical characteristics which is occasioned by the culpability of the defendant resulting in his reincarceration for a serious criminal offense for which he was convicted and sentenced, albeit before marriage and with the knowledge of his wife. In fact, I find that public policy in the matter as determined from the legislative intent requires such inclusion.