**Richmond**

THOMAS H. PAYNE

v.

KAREN M. PAYNE

No. 1359-86

and

KAREN M. PAYNE

v.

THOMAS H. PAYNE

No. 1437-86

Decided December 15, 1987

COUNSEL

W. Clyde Gouldman, II (Buck, Hogshire & Gouldman, Ltd., on brief), for appellant.

R. Lecky Stone, Jr. (Wood & Stone, on brief), for appellee.

OPINION

DUFF, J. — In his appeal, Thomas H. Payne challenges the chancellor's award of $1,400 per month spousal and child support, contending that it was an abuse of discretion because it exceeded his present ability to pay. (Record No. 1359-86-2). In her cross-appeal, Karen M. Payne challenges various aspects of the equitable distribution award. (Record No. 1437-86-2). Based upon our review of the record and the arguments and authorities presented, we hold that the chancellor's award of $1,400 spousal and child support was error and remand for further proceedings. We also affirm in part and reverse in part the equitable distribution award and remand for further consideration.

## I. BACKGROUND

Thomas and Karen were married in 1969. Karen taught at Madison County High School while Thomas obtained a master's degree in business from the University of Virginia. Thereafter, Thomas worked for a national accounting firm and the couple moved to various locations over the next three years. Karen did not work full-time, but on occasion did some typing in their home on a part-time basis to earn extra income. In late 1974, Thomas was transferred to California. Two years later, he decided to change plans and pursue a career in counseling. With Karen's support, Thomas left his job with the accounting firm, went back to school part-time to obtain a degree in family counseling, and worked full-time as a hospital administrator. Karen also worked in the same hospital on a part-time basis.

In 1980, the couple began experiencing marital difficulties and in February 1981, they obtained an interlocutory divorce decree from a California court. The decree adopted a "Marital and Property Settlement Agreement" that provided for a division of the parties' property and a waiver of alimony by Karen. Thereafter, Thomas moved to Charlottesville, Virginia, intending to start a small financial counseling business. Karen elected to remain in California.

Shortly after arriving in Virginia, Thomas received a telephone call from Karen advising that she was pregnant. After more telephone calls, the parties decided to reconcile and pursue what was described as a "spartan" lifestyle. Karen returned to Charlottesville, and their son, Luke, was born in October 1981.

Thomas began his financial counseling business in 1982 with Karen's approval and support. They agreed that he would attempt to limit his work commitment to four days per week in order that he might spend more time with his family. Marital problems developed during the next several years, and in August of 1985, Thomas left Karen and moved into a house with his brother and sister-in-law.

The evidence taken at trial disclosed that Thomas's average net monthly disposable income from the counseling business was $1,569 in 1984, $2,083 in 1985, and $1,660 in 1986. He stated that the 1986 decrease was due to a severe curtailment of contractual business from Family Services, a United Way agency, and that this curtailment would continue in the future.

## II. SPOUSAL AND CHILD SUPPORT

In the final decree of November 6, 1986, the chancellor awarded support of $1,400 per month to Karen ($1,000 in spousal support and $400 in child support). The decree then contained the following provisions:

> Recognizing that Respondent Husband presently has net disposable income from his financial counseling business of approximately $1,600.00 per month and from that cannot pay at this time the combined child and spousal support of $1,400.00 per month, the court has decided to modify said award until October 1, 1987. This modification shall allow Husband to pay a reduced total monthly payment until October 1, 1987 of $1,066.00, or two-thirds (⅔) of his net disposable income from his business which should allow Husband a "breathing" period to find a different job or find other means of increasing his net disposable income . . . payable bimonthly in equal $533.00 increments on the 1st and 15th of each month. One-half of those payments shall be deemed child support and one-half spousal support unless the parties . . . reach some alternate designation.

On appeal, Thomas contends that the trial court erred by: (1) fixing the amount of support at $1,400 per month when the evidence showed a monthly income for 1986 of $1,660; (2) assuming he could increase his income to a level at which he would be able to pay the award, although there was no evidence supporting that assumption; and (3) failing to consider Karen's earning capacity as required by Code § 20-107.1. We agree with these contentions, reverse the award of child and spousal support, and remand for further determination of the support issue.

 Spouses "entitled to support have the right to be maintained in the manner to which they were accustomed during the marriage, but their needs must be balanced against the other spouse's financial ability to pay." *Dukelow v. Dukelow*, 2 Va. App. 21, 26, 341 S.E.2d 208, 210 (1986). Code § 20-107 authorizes courts "to consider not only earnings but also 'earning capacity.'" *Jacobs v. Jacobs*, 219 Va. 993, 995, 254 S.E.2d 56, 58 (1979). However, the award must be based upon the circumstances in existence at the time of the award. An award "premised upon the occurrence of an uncertain future circumstance . . . ignores the design and defeats the purpose of the statutory scheme." *Id.* at 995-96, 254 S.E.2d at 58. Further, the amount of "support . . . is a matter within the discretion of the court and will not be disturbed on appeal unless it is clear that some injustice has been done." *Dukelow*, 2 Va. App. at 27, 341 S.E.2d at 211 (citing *Oliver v. Oliver*, 202 Va. 268, 272, 117 S.E.2d 59, 62 (1960)).

In the present case, we find that the spousal support award constituted an abuse of discretion. The record reveals that the award left Thomas with approximately $200 per month to meet his monthly expenses. In *Robertson v. Robertson*, 215 Va. 425, 211 S.E.2d 41 (1975), the Court set aside the nearly $20,000 per year alimony award as unreasonable when such an award would leave the husband with approximately $11,000 at the time of the hearing to meet his expenses. The Court found that the amount left to the husband was substantially less than what he needed to meet his personal expenses and to discharge his other financial obligations. *Id.* at 429, 211 S.E.2d at 45.

In the present case, the chancellor denied Thomas's motion to reconsider, stating that he was "expecting his income to change because he's capable of making more money than that." The chancellor's award appears to be based upon the belief that

Thomas had the capacity to earn more money but was not utilizing that capacity. In an appropriate case, such reasoning might be valid. Here, however, we find insufficient evidence that Thomas could increase his income, or to establish the amount of such increase. In fact, the chancellor observed that "the good Lord himself doesn't know" how much more money Thomas can earn.

■ Our decision does not suggest that a spouse may purposely choose to pursue a low paying career which operates to the detriment of the other spouse and children. In *Butler v. Butler*, 217 Va. 195, 227 S.E.2d 688 (1976), the court refused to modify a decree on the basis of the husband's inability to pay because the husband conceded that "he could double his income" by leaving his present staff position and engaging in private practice. In *Taylor v. Taylor*, 203 Va. 1, 121 S.E.2d 753 (1961), the court affirmed an award that was based on the amount earned by the husband the previous year in a job he left after the parties separated, one to which he could return later if he desired. We find that these cases are not applicable to the facts in the present appeal. In *Butler* and *Taylor* the evidence showed that the spouse ordered to pay support had occupational alternatives and that his occupational choice was solely his decision. However, the evidence in the record before us shows that the establishment of Thomas's counseling business was with Karen's approval and support. Further, no evidence suggests that Thomas could seek other fields of employment that would yield a higher income.

An award of child support must also be based on current circumstances. *See Keyser v. Keyser*, 2 Va. App. 459, 461, 345 S.E.2d 12, 13 (1986). Accordingly, we vacate the award of spousal and child support and remand the case for further proceedings. Upon remand, the chancellor must also consider Karen's earning capacity as required by Code § 20-107.1. *See Dodge v. Dodge*, 2 Va. App. 238, 246, 343 S.E.2d 363, 367 (1986).

## III. EQUITABLE DISTRIBUTION

In her cross-appeal, Karen challenges the trial court's equitable distribution award. The issues she presents may be summarized as follows: (1) whether the trial court erred in determining that an equal division of the marital property was equitable; and (2) whether the terms of Code § 20-107.3(D) authorize the trial

court to require a party to accept property in satisfaction of a monetary award and also assume payment of its lien obligation. Based upon our consideration of the record, we find that the chancellor did not abuse his discretion in ordering an equal division of the marital property. Accordingly, we affirm that portion of the award. However, we find that the court erred in requiring Karen to assume the existing lien obligation in satisfaction of the monetary award.

The chancellor found that an equal division of the marital property was justified by the evidence. This finding resulted in an award of $58,741 to each party. Karen complains that such an award is inequitable and in support of her argument, she analyzes the various factors contained in Code § 20-107.3(E). Her analysis, while appealing, does not find support in the record as the basis upon which the chancellor arrived at his judgment.

The record shows that the court made its ruling after seven or eight hours of testimony and after it considered all of the factors contained in the statute. The decree states in part that the trial court's determinations were made pursuant to the "provisions and criteria found in Code § 20-107.3" and that an equal division of the marital property was "justified under the circumstances." The chancellor made clear that if the circumstances were different, a fifty-fifty equal division would be wrong; however, based upon the evidence before him, such a division seemed "the fair way to do it."

We do not agree with Karen's argument that the chancellor acted in a rote fashion, mechanically ordering an equal division of the property while thinking that he had no alternative. The record reveals that his decision was made after a consideration of the evidence and statutory factors in Code § 20-107.3(E). Accordingly, we hold that the chancellor did not abuse his discretion in ordering an equal division of the marital property, and we affirm that part of the decree.

That portion of the decree specifying the method of payment of Karen's $58,741 monetary award presents a more difficult question. Thomas received a credit of $42,150, representing the release of his interest in a Volvo automobile and the parties' marital home. This left a balance of $16,591 owed to Karen. Paragraph five of the decree recited as follows:

Pursuant to § 20-107.3(D), the husband may elect to transfer to wife his interest in certain California property designated in Exhibit A as "Whitmore" with a net value of $17,000.00 . . . . The court will and does approve such transfer. If husband makes such a transfer, wife shall assume the related existing first mortgage and hold husband harmless from further obligations arising under said mortgage. That transfer shall reduce the Court's monetary award of $16,591.00 against husband to a negative balance of $409.00, with said amount being owed to husband by wife and payable within a reasonable time after closing.

Karen objects to this portion of the decree, contending that the court had no statutory or other authority to require her to accept the California property and to assume payment of the mortgage debt on the property. The resolution of this issue involves an analysis of Code § 20-107.3(D), which provides in pertinent part that "[t]he party against whom a monetary award is made may satisfy the award, in whole or in part, by conveyance of property, subject to the approval of the court."

The obvious reason for this provision is to enable the parties to make payment of a monetary award by adjustment of their property. The legislature gave the option of this method of payment to the "party against whom a monetary award is made." The statute makes no mention of consent, approval or acceptance by the party to whom the property is to be conveyed. However, it does make such a transfer subject to the court's approval. We believe this provision serves to prevent unilateral action by the party seeking to make payment by the transfer of property. Thus, we disagree with Karen's first argument that the court had no authority to require her to accept the property as a method of payment of the award. We hold that this was precisely what the General Assembly intended when it enacted Code § 20-107.3(D).

However, either the granting or the withholding of court approval of the transfer must reflect the exercise of sound judicial discretion in the light of all of the circumstances presented. Based upon the evidence taken at trial and the representations of counsel at argument, it appears that the Whitmore property was originally purchased in both names with the parties executing the deferred money purchase note. At the time of the California limited di-

vorce, the property was transferred to Thomas. Because Karen's name remained on the purchase note, Thomas executed a "hold harmless" agreement protecting Karen from any future liability on the note.

At this point, judicial discretion mandates a careful consideration of all of the pertinent circumstances to determine whether the approval of the transfer of the Whitmore property was an appropriate method of payment of the $16,591 award to Karen. The record discloses that the property was located in California, several thousand miles from Karen's residence. It also shows that Thomas had unsuccessfully attempted to sell the property. The parties had stipulated that the equity in Whitmore was $17,000, and the chancellor obviously intended this equity to constitute payment to Karen of the $16,591 monetary award in her favor. Without expressing an opinion as to the chancellor's authority to do so, we note that the final decree made provision for Karen's payment to Thomas of $409, the excess of the equity over the monetary award.

To realize payment of her award, Karen was required to assume the burden of selling the property which Thomas had been unable to do. Realistically, she would incur payment of a sales commission, payment of pro-rated taxes and other incidental expenses in connection with the sale. Thus, even if the property sold at a price sufficient to yield the equity of $17,000, her net receipt would be less than her monetary award to the extent of the expenses associated with the sale. Under these circumstances, we find that the approval by the chancellor of the transfer of the property in payment of the award was an abuse of discretion and must be set aside. This becomes more evident in view of the fact that the final decree imposed upon Karen the assumption of payment of the mortgage lien on the property, an obligation against which she was protected prior to the approval. We find no authority in the statute for requiring the assumption of this financial obligation.

Finally, Karen asserts that the chancellor erred in ordering that the household furnishings of the parties be sold to effectuate a partition with the proceeds to be divided equally. The court found that the furnishings were jointly-owned marital property. Code § 20-107.3(C) provides that the court may partition such property. After ordering partition, but before implementing it, the

court decree gave the parties a forty-five (45) day period to mutually agree to an equal division of the property. This was not done and the partition order became effective. We find no abuse of discretion in the chancellor's determination of this aspect of the case.

In summary, we reverse the award of spousal and child support and remand the case for further consideration. We affirm the equal division of the marital property and the monetary award, but reverse the approval of the transfer of the encumbered Whitmore property. Finally, we affirm the order of partition of the household furnishings.

*Affirmed in part,*
*reversed in part*
*and remanded.*

Baker, J., and Cole, J., concurred.