**Alexandria**

DAVID A. STAINBACK

v.

HELENE STAINBACK

No. 0283-89-4

Decided September 4, 1990

COUNSEL

Dennis J. Smith (Shoun, Smith & Bach, on brief), for appellant.

Richard J. Colten (Surovell, Jackson, Colten & Dugan, on brief), for appellee.

OPINION

**DUFF, J.**—David H. Stainback appeals from a divorce decree awarding his wife, Helene Stainback, a divorce based on desertion and adultery. This appeal involves issues concerning the equitable distribution of the couple's property. Because we find that the lower court erred in its classification of part of this property, we

reverse.[1]

## I.

David (husband) and Helene (wife) Stainback were married on September 30, 1972, in Greenwich, Connecticut. Over the course of their marriage the parties had three children: David, born April 18, 1979; Matthew, born July 15, 1981; and Caroline, born August 30, 1984. When the couple married, the husband had an undergraduate degree in physical education and the wife held an undergraduate degree in English literature. The husband took art courses at the Corcoran Art Institute and worked part-time, while the wife worked part-time and subsequently full-time at Riggs Bank. The wife took graduate courses in business and finance, though she obtained no degree.

David Stainback is one of four children of Dr. William C. Stainback. In 1976, Dr. Stainback gave fifty shares of Crounse Corporation stock to each of his children. Dr. Stainback testified that the stock was purposefully registered by him in his children's individual names.

---

[1] Our reversal of the lower court ruling renders moot many of the issues raised. We will discuss most of the remaining issues in the main body of this opinion. We note here the disposition of the remaining issues.

Code §§ 20-107.1(7) and (8) require the trial court to consider the property interests of the parties as well as the provisions made with regard to the marital property when making a spousal support award. We will not determine whether the trial court erred in its award of spousal and child support since our ruling will significantly alter the size of the pool of marital property. We also do not reach the question of whether the trial court abused its discretion in awarding $1,056,750, along with one-half of the net proceeds from the sale of the jointly titled marital residence, to the wife.

The wife maintained, and the trial court concluded, that the husband's income was deliberately depressed. The husband argues that this was error. We disagree. The evidence before us clearly indicates that the trial court was justified in its findings. As the trial court noted, it appears from the record that the husband earns what he wishes to earn from his father's business. A spouse may not, however, voluntarily pursue or maintain a low-paying career to the detriment of his or her family. *Payne v. Payne*, 5 Va. App. 359, 364, 363 S.E.2d 428, 431 (1987). We therefore affirm this portion of the lower court ruling, as there was sufficient credible evidence in support thereof.

We also will not disturb the trial court's finding that the wife contributed proportionally far more than the husband economically and non-monetarily to the well-being of the family and the acquisition of marital property. This is a factual finding on the part of the trial court. Under familiar principles, we may not disturb these findings where they are supported by credible evidence. *Shaughnessy v. Shaughnessy*, 1 Va. App. 136, 138-39, 336 S.E.2d 166, 168 (1985).

On March 31, 1981, the husband borrowed $71,000 from his father. The court found, in the face of conflicting testimony, that this loan was secured by a promissory note dated April 10, 1981. In August of 1981, the husband used the $71,000 to purchase an additional seventy-one shares of Crounse stock. The Crounse stock eventually split four for one. One additional stock certificate was issued to the husband individually for four hundred eighty-four shares, resulting in ownership of six hundred and five shares of stock.

There is a clear difference of opinion between the parties as to how the stock was treated during the marriage. Testimony from both parties, however, indicates that the dividends from the stock were used for family purposes.

In 1980, the wife terminated her employment with Riggs. In December of that year, Dr. Stainback established Arlington Enterprises, Inc., to help the husband toward a career in art. The husband was hired and worked for his father's firm. His duties included general management of a storage facility, management of various farms, as well as production of art works. The art works produced by the husband were the property of Arlington Enterprises. All proceeds from the sale of the husband's art work after 1980 were deposited into the corporation's accounts.

Upon conclusion of the evidence, the trial court found that the marital property consisted of: the marital residence with equity net of mortgage and sales costs of $83,793.91; household furnishings and effects with a value of $10,008; art supplies and equipment with a value of $1,500; cash reserve account with a balance of $230.35; life insurance policies with combined cash value of $5,325.69; and jewelry with a value of $675. The court found that the husband had separate property consisting of, among other things, original works of art created by him with a value of $55,250.

As to the Crounse Corporation stock, the court determined that it had a fair market value of $2,700 per share, and found that all of the stock was marital property. The court held that the original fifty shares were acquired by gift from the husband's father *to the parties* in December, 1976; that the seventy-one shares were purchased in August 1981 with funds borrowed from Dr. Stainback, the indebtedness being evidenced by a promissory note; and that

the four hundred eighty-four shares of stock issued as a result of the stock split in 1985 were marital, as the underlying stock was marital.

The court further found that, even if any one or all of the three blocks of stock had been separate property, such property was transmuted from separate to marital property "by the terms of a valid agreement between the parties, pursuant to which the parties adopted a living arrangement which supported and enhanced Husband's artistic career, but voluntarily depressed his income and the parties' ability to use his earnings during the marriage to acquire a marital estate, with the understanding that all assets acquired by either party would be considered assets of the marriage."

The court ordered: (1) that the jointly owned real property be sold, the proceeds of the sale to be divided equally between the parties; (2) that all other marital personal property be divided; (3) that the husband retain ownership of the Crounse Corporation stock; and (4) that the husband pay a monetary award to the wife in the amount of $1,056,750, to be paid in installments of at least $1,300 per month commencing on December 1, 1988, with all unpaid sums due and payable on December 1, 1990, or at such earlier date as the husband sells, conveys or otherwise disposes of the stock.

## II.

The husband first argues that the the trial court erred in classifying the original fifty shares of Crounse stock as marital property. We agree.

Under Code § 20-107.3, in effect on the date this suit was filed, all property acquired during marriage and before the last separation of the parties is presumed to be marital property. "[T]he party claiming property as separate has the burden to produce satisfactory evidence to rebut that presumption." *Rexrode v. Rexrode*, 1 Va. App. 385, 392, 339 S.E.2d 544, 548 (1986). If no evidence is presented upon which a chancellor could properly identify and then classify an item as separate or marital property, faced with the statutory presumption and the lack of satisfactory evidence to rebut it, the chancellor must classify the property as marital. In the case of a gift to one of the spouses, if there is

credible evidence presented to show that the property was intended by the donor to be the separate property of one of the spouses, the presumption is overcome, and the burden shifts to the party seeking to have the property classified as marital to show a contrary intent on the part of the donor.

In the instant case, Dr. Stainback, the husband's father, testified that the fifty shares of stock were registered by him in his children's individual names, not in the names of his children and their respective spouses. While there was conflicting testimony from the husband and wife on the subject of whether or when the stock was to be used for the benefit of the family, there was no testimony of discussions between the wife and Dr. Stainback regarding who was to be the beneficiary of the gift. The wife presented no basis for determining the intent of Dr. Stainback other than his testimony that the object of the gift was his son.

The trial court's finding that there was insufficient evidence of intent on the part of Dr. Stainback to make a gift to his son alone is not reconcilable with the evidence presented at trial. The direct testimony of Dr. Stainback was that the stock was registered intentionally in his son's individual name, and there was no testimony concerning an intent on Dr. Stainback's part to make a gift to both of the parties. The stock was kept separate after it was received by the husband. While the dividends from the stock may have been used for family purposes, the principal was at all times kept separate. Moreover, the uses to which the property was put and any agreements between the spouses after the gift was received would be relevant only to the question of whether the property was transmuted from separate property to marital property, not to the character of the property at the time it was given.

We hold that the husband presented sufficient evidence to rebut the statutory presumption that the fifty shares of Crounse stock were marital property at the time they were given to him. As the wife presented no evidence showing a contrary intent on the part of the donor, Dr. Stainback, the court below erred in classifying the property as marital.

## III.

The husband also asserts that the trial court erred in classifying the seventy-one shares of Crounse stock as marital property and

that the transfer of the stock, regardless of the method used to achieve it, was a gift to him from his father. We disagree.

The record contains conflicting evidence regarding the acquisition of the seventy-one shares of Crounse stock in 1981. In the face of differing statements from the parties, the court held that the husband had borrowed $71,000 from his father in March 1981, and that this loan was secured by a promissory note. In August 1981 the principal of this loan was used to purchase the stock in question.

■ The executed promissory note was not produced. The wife testified that the husband signed a promissory note evidencing a $71,000 debt to his father, and that after the suit was instituted, her husband told her he owed his father $71,000. The husband testified at trial that he remembered discussions of a note, but did not recall seeing or signing one. In his earlier depositions the husband testified that he signed a note. After hearing all of the evidence, the trial court found that the husband had in fact executed a note. The judgment of a trial court sitting in equity, "when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Frye v. Spotte*, 4 Va. App. 530, 537, 359 S.E.2d 315, 319-20 (1987). A review of the record before us indicates that the trial court's determination that this transaction was a loan evidenced by a promissory note is supported by credible evidence. Accordingly, we will not disturb it.

Irrespective of the existence of a signed note, it was uncontroverted that the parties treated the transaction as a loan. The husband acknowledged the debt in two pretrial depositions, on a written financial profile prepared during the litigation, and in a post-separation conversation with his wife. The wife understood that the loan would be retired when the stock was sold. Testimony was also received indicating that Dr. Stainback never intended to enforce collection of the debt, but that the entire transaction was entered into to give Dr. Stainback a tax advantage. The husband argues that this indicates the donative intent of the father and therefore the seventy-one shares of Crounse stock should be treated as separate property.

In *Wagner v. Wagner*, 4 Va. App. 397, 358 S.E.2d 407 (1987), the wife executed a purchase option in October 1976 to obtain an

interest in a shopping center. She used funds which had been borrowed from her father approximately one month earlier. She had executed a promissory note in favor of her father in connection with the loan. In December of 1976, about three months after the loan was concluded, the father forgave the note and filed a gift tax return. This Court determined that the trial court should have classified this property as marital, since the character of property at the date of acquisition governs its classification pursuant to Code § 20-107.3(A). *Wagner*, 4 Va. App. at 404, 358 S.E.2d at 410.

We noted in *Wagner*, as we note here, that had the father died prior to formally forgiving the note, the child, here the husband, would have been liable on the note to the father's estate. Based upon all of the evidence presented to us, we hold that the seventy-one shares of stock were properly classified as marital property. They were acquired during the marriage for consideration and were not acquired in exchange for, or from the proceeds of sale of, separate property. *See Brown v. Brown*, 5 Va. App. 238, 361 S.E.2d 364 (1987).

## IV.

The husband next contends that the trial court erred in determining that the original fifty shares of Crounse stock were transmuted from separate to marital property as the result of an agreement between the parties. We agree.

In *Smoot v. Smoot*, 233 Va. 435, 357 S.E.2d 728 (1987), the Supreme Court held that the Commonwealth would follow the transmutation theory of property, and that property in divorce actions could either be classified as marital or separate, but not both. The transmutation theory has been favored by the court as the method best suited to allow the trial court to arrive at an equitable result.

The finding of the trial court was that the parties had a valid agreement which resulted in a transmutation of the nature of the stock from separate to marital. This "agreement" consisted of conversations between David and Helene about uses to which the stock could be put. The court found that the stock "in [the wife's] mind was at least in part a retirement plan."

There does not appear in the record any evidence that the stock itself was ever made available to anyone other than the husband. While it may be true that the interest and dividends of the stock were committed to family use, it is equally clear that the husband never surrendered dominion and control of the corpus. Great consideration should be given to the actions, or non-action, of the parties with regard to exercising control over the property in question. Conversely, very little weight should be given to statements made about the nature of property or the uses to which it will be put unless those statements are supported by actions on the part of the speaker indicating his or her intent. To allow general conversation between husband and wife to constitute an "agreement" between the parties, without more, is to turn the institution of marriage into an ongoing contract, the terms of which are mandated by each word spoken between the spouses.

There is no evidence in the record of any discussion between the husband and the wife in which he stated or they agreed that they would change their lifestyle in dependence on the stock. As well, the record is clear that the husband's decision to pursue his art career was made prior to the gift of the stock. Accordingly, we hold that there is no evidence of any actions taken by the husband indicating his intent to turn his separate property over to the marital estate, and that the fifty-share block of Crounse stock was not converted to marital property by the doctrine of transmutation.

## V.

The husband further contends that the trial court erred in admitting evidence of a prospective inheritance. Because this issue may arise on retrial we will discuss it briefly here.

At trial, the court heard evidence as to the size of Dr. Stainback's estate and allowed questioning of Dr. Stainback as to whether or not the husband would be an equal beneficiary of that estate. Over the husband's objection the court ruled that this information was relevant to the economic potential of the husband.

This Court, in *Reid v. Reid*, 7 Va. App. 553, 375 S.E.2d 533 (1989), stated that the Code:

provides for the equitable distribution of the *accumulated* marital wealth between the marital parties; it does not con-

template consideration of the *future* ability of one spouse to accumulate what will be separate property or the *future* needs of the other spouse. In short, the marital partnership notion terminates with the termination of the marriage and whatever marital wealth has been accumulated is to be equitably distributed at that time. It is axiomatic that whatever the future may hold for either of the parties has no bearing on the issue of the appropriate division of what has been accumulated by their contributions during the marriage.

*Id.* at 565, 375 S.E.2d at 540.

The trial court erred in allowing evidence of Dr. Stainback's intentions and the husband's possible inheritence. Accordingly, such evidence should be disregarded in any future proceedings in this case.

## VI.

At trial, testimony was received concerning the value of the Crounse stock. Witness John Funkhouser testified that he is a general partner with Hill Crest Group, managers of two venture capital firms. He testified that his information regarding Crounse Corporation was limited to financial statements that were presented to him by counsel for the wife, and that he would pay approximately $2,000 per share for the stock. This line of questioning was objected to by David's counsel, but the Court overruled the objection and stated that Mr. Funkhouser was "representative of sophisticated or knowledgeable investors and what they would pay for the stock." The husband contends that the trial court erred in admitting this testimony, as Mr. Funkhouser was not an expert. We disagree.

In determining the amount of a monetary award, the court is required to consider the liquidity of marital property. The Crounse stock is significant in relation to the value of the marital estate. Absent agreement, some of the shares may have to be sold to satisfy a monetary award in Helene's favor. The company is privately owned. Valuation experts for both parties described potential difficulties in disposing of the stock at its true worth and identified an investment speculator as the most likely category of purchaser. Indeed, the only known market disclosed by the evidence apart from Mr. Funkhouser's testimony, is a corporate buy-

back offer at $1,000 a share, well below the values assigned by both experts.

■ It is widely recognized that a lay witness may express an opinion as to value. *See Haynes v. Glenn*, 197 Va. 746, 91 S.E.2d 433 (1956). As was the case here, the witness need only have had an opportunity to become familiar with the property and to form an opinion as to its true value. *See Kerr v. Clinchfield Coal Corp.*, 169 Va. 149, 192 S.E. 741 (1937). We hold, therefore, that it was not error for the court to receive Mr. Funkhouser's testimony.

## VII.

The trial court concluded that the husband and Arlington Enterprises were alter egos for purposes of ownership of his art; nevertheless, the court classified the paintings as David's separate property. The wife disagrees and assigns cross-error to this classification.

Two issues are presented by the assignment of cross-error. We must determine whether the record contains credible evidence to support the factual determination by the court that the husband and Arlington Enterprises were alter egos. If the record supports that determination, we are not permitted to substitute our judgment for that of the chancellor. We also must determine whether the record shows such art works to be separate property.

We hold that the evidence amply supports the chancellor's decision to disregard the corporate entity in determining ownership of the artwork. Arlington Enterprises is a close corporation set up by Dr. Stainback. The entity was formed for the benefit of the husband and his father, and the interests of ownership and management are inextricably entwined. The husband has served as president and director since inception. The company engages exclusively in the personal business of its president and sole stockholder. The parties, together with the husband's parents, guaranteed corporate debt. Profits, including monies generated by sale of the husband's paintings, are expended for the husband's personal use. Although different inferences could be drawn by reasonable minds from the evidence presented, we find that the chancellor's holding was supported by credible evidence.

▮ Code § 20-107.3(A)(2) creates a "rebuttable presumption that property acquired during marriage is marital property." *Lambert v. Lambert*, 6 Va. App. 94, 99, 367 S.E.2d 184, 187 (1988). The paintings were not acquired before marriage, by bequest or gift outside the marriage, or in exchange for or from the proceeds of sale of separate property. In the absence of adequate evidence that the art work was the husband's separate property as defined in Code § 20-107.3(A)(1), the court was required to conclude that it was marital.

▮ Here, the property in question came into being because of the labors of the husband. A partner in a marriage owes his labor during the marriage to the marital partnership. The fruits of that labor, absent express agreement, are marital property. "Although separate property, by the manner in which it is maintained, may be commuted into marital property, marital property, in the absence of a valid, express agreement by the parties, cannot become the separate property of one of the parties." *Wagner*, 4 Va. App. at 404, 358 S.E.2d at 410.

We find, therefore, that the trial court erred in concluding that the works of art were the husband's separate property. Upon remand they should be included in the pool of marital property.

## VIII.

The final issue presented is whether the trial court exceeded its authority in ordering a termination of alimony and a reduction in child support to take place when the equitable distribution monetary award has been satisfied. As noted by the wife, in *Keyser v. Keyser*, 2 Va. App. 459, 345 S.E.2d 12 (1986), we held that Virginia's statutory scheme does not contemplate automatic changes in support. Upon the facts presented by this case, however, we find no error.

*Keyser* and the cases that preceded it dealt primarily with anticipated increases in the obligor's income. The courts, relying on these anticipated changes, created support awards which allowed for automatic upward adjustment after a certain period of time. Such action by the trial court was deemed to be improper because "changes are not fairly predictible, and . . . support awards must be determined in light of contemptorary circumstances and . . . redetermined in light of new circumstances." *Jacobs v. Jacobs*,

219 Va. 993, 995, 254 S.E.2d 56, 58 (1979).

Here, we are faced with a support award in which the trial court has allowed for a future *decrease* in support payments. This decrease is based not upon an *anticipated* change in circumstance, but upon a change in circumstance which the trial court has itself imposed. Thus, the trial court is not relying upon a speculative change in circumstances, but upon a change by order of the court. In such a circumstance, we will uphold the modification so long as there exists a rational basis for the trial court's award.

As a result of the monetary award granted to the wife and the final disposition of the marital property, the husband will need time to rearrange his finances to be in a position to comply with the court's order. At the same time, however, the wife and children are entitled to support. It is clear that the trial court considered both of these interests by allowing the husband time to arrange his finances while making provision for the wife and children in the interim. The trial court simply bridged the gap between the time of the decree and the time at which the husband could reasonably be expected to comply with the court's order. In such a case, we find no error in the court's reasoning.

In summary, we find that the original fifty shares of Crounse Corporation stock was the husband's separate property and that there was no transmutation of that stock to the marital estate. We find that the seventy-one share block of Crounse stock was marital property from the time of its original purchase. We also find that the trial court erred in admitting evidence of the husband's prospective inheritance and that the testimony of John Funkhouser was admissible. Finally, we find no error in the support award, or the termination of that award, directed by the trial court.

Accordingly, the decree appealed from is

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Keenan, J., concurred.

Moon, J., dissenting.

Except for being constrained to follow prior precedent of *Wagner v. Wagner*, 4 Va. App. 397, 358 S.E.2d 407 (1987), I would dissent from that part the majority opinion that affirms the trial court's decision that the seventy-one shares of stock in the family corporation given to the husband by his father in 1981 should be deemed marital property. I believe the uncontradicted evidence was such that reasonable men could not disagree that the entire transaction, involving the $71,000 note and transfer of the seventy-one shares of stock to David, constituted a gift by his father to him.

The fact that the gift was accomplished in a manner designed to avoid estate and gift taxes and to get the stock released from David's father's pension fund without violating federal rules against prohibited transactions, does not change the fact that this was a gift. *See Wagner v. Wagner*, 4 Va. App. 397, 412, 358 S.E.2d 407, 415 (1987) (Baker, J., dissenting). The father never intended anything other than to make a gift of the stock to his son. The substance of the transaction is what matters, and we should not exalt form over substance. *Cf. Gologanoff v. Gologanoff*, 6 Va. App. 340, 369 S.E.2d 446 (1988). I would hold the word "gift" in Code § 20-107.3 includes gifts accomplished in this manner. Otherwise, for no beneficial purpose citizens with legitimate tax concerns will be unreasonably hampered in their giving. I would overrule *Wagner*.

For the same reasons as stated by the majority with regard to the first fifty shares, I would hold that seventy-one shares, if deemed separate property, also did not transmute to marital property.

Finally, even though the seventy-one shares are deemed to be marital property, I would hold that the evidence does not support a finding that the wife is entitled to a monetary award equal to one-half the value of the shares. There is no evidence to support a finding that the wife did anything to obtain or maintain the stock. Her husband did not use marital funds or energy for its maintenance or the corporation's interest during the marriage. Any notion that the husband risked "marital credit" by signing the $71,000 note to obtain the gift defies credulity. The husband already owned as separate property fifty shares of the stock, now

valued at over $1,000,000. By signing the note, he received an additional seventy-one shares of greater total value. The creditor, the husband's father, never intended that the loan be repaid. The wife did not sign or endorse the note. The money from the note was maintained in a separate account by the husband until the stock transfer was complete. Any risk to marital assets was so negligible that it should not be given legal significance.

If the husband, with the wife's help, pursued a lower paying art career rather than a physical education career, the wife may be entitled to a larger monetary award from other marital assets based upon the assumption that the remainder of the marital estate might have been greater had the husband pursued a more lucrative physical education career. However, there is scant, if any, evidence that shows the family fortunes would have been greater had he chosen a different career.

I believe our cases instruct that where property has transmuted by the technical application of the rule in *Smoot v. Smoot*, 233 Va. 435, 357 S.E.2d 728 (1987), the source of funds factor is entitled to such weight so as to fairly compensate the person whose separate property it would or should have been if not for transmutation. *Lambert v. Lambert*, 6 Va. App. 94, 104, 367 S.E.2d 184, 190 (1988). Giving fair consideration to the factors contained in Code § 20-107.3, the evidence does not, as a matter of law, support an equitable award to the wife of one-half the value of the stock received from the husband's family.

Therefore, I would affirm in part, but I respectfully dissent in part.