COURT OF APPEALS OF VIRGINIA

Present: Judges Bumgardner, Clements and McClanahan
Argued at Richmond, Virginia


MICHAEL RAYMOND SIMPSON

v.      Record No. 1815-04-2

BARBARA BAGANZ SIMPSON                    MEMORANDUM OPINION[*] BY
                                          JUDGE RUDOLPH BUMGARDNER, III
BARBARA BAGANZ SIMPSON                    APRIL 26, 2005

v.      Record No. 1827-04-2

MICHAEL RAYMOND SIMPSON


             FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                         Paul M. Peatross, Jr., Judge

             Steven L. Raynor (Robert E. Byrne, Jr.; Martin & Raynor, P.C., on
             briefs), for Michael Raymond Simpson.

             John K. Taggart, III (Patricia D. McGraw; Tremblay & Smith, LLP,
             on briefs), for Barbara Baganz Simpson.


        Michael R. Simpson and Barbara B. Simpson appeal their final decree of divorce. The

wife contends the trial court erred in classifying assets as the husband's separate property, in

upholding a deed of partition, and in issuing a prospective ruling. The husband contends the trial

court incorrectly calculated spousal support. For the following reasons, we affirm.

        The parties married in July 1988, had children in 1988 and 1990, and separated on

December 9, 2002. The wife filed for divorce January 9, 2003 on the grounds of adultery. The

trial court heard the evidence *ore tenus* and received voluminous exhibits in January and

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

February 2004. It issued a letter opinion February 26, 2004 and incorporated those decisions in its final decree entered July 6, 2004.

The trial court granted the wife a divorce *a vinculo matrimoni* and classified certain rental real estate and a limited liability corporation as the husband's separate property. It awarded the wife the marital residence and a total of 65% of the marital estate. It fixed spousal support at $7,727 per month and child support at $1,828 per month.

We view the evidence in the light most favorable to the husband who prevailed in the trial court on the issues of classification. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). See also Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). Before the marriage, the husband owned and operated with his uncle a successful business named the Ceiling and Floor Shop, Inc. They also began a practice of purchasing rental real estate together. As they built equity and accumulated excess income from their rents, they would acquire additional rental properties.

The husband and his uncle continued their practice of acquiring real estate after the husband's marriage. Before the marriage, the husband and his uncle had purchased five rental properties. During the marriage they acquired eleven more rental properties and continued the business practices established before the marriage. The husband and his uncle also formed a limited liability corporation, CFS Property, LLC, that acquired and held title to the commercial property where the Ceiling and Floor Shop conducted its business. It consisted of the shop's retail space, offices, warehouse, and loading docks.

Property acquired during the marriage is presumed to be marital property. Code § 20-107.3(A)(2); Courembis v. Courembis, 43 Va. App. 18, 35, 595 S.E.2d 505, 513 (2004); Stainback v. Stainback, 11 Va. App. 13, 17, 396 S.E.2d 686, 689 (1990). Separate property is any property acquired by a party before the marriage and maintained separately. Code

§ 20-107.3(A)(1). Additionally, "[i]ncome received from separate property during the marriage is separate property if not attributable to the personal effort of either party." Id. The husband had the burden to prove by a preponderance of the evidence that the funds used to acquire new rental properties were separate.

The husband introduced detailed financial records to support his testimony that the rental properties were his separate property. The exhibits show that rental income was deposited to a separate rental checking account established in the name of the husband and his uncle alone. Those funds paid the mortgage on the property. When the partners accumulated sufficient surplus, they used it to purchase another rental property. All rental properties were titled in the name of the husband and his uncle, and only they executed the notes and deeds of trust associated with the purchases. The husband's testimony was corroborated by his uncle and the company's two bookkeepers. No evidence showed commingling of separate and marital funds.

The trial court found that the husband sufficiently "traced the sources of the funding and the payment of mortgages from separate funds which he kept separate from marital property." The wife presented no exhibits to contradict the husband's records or to show marital funds were commingled. She made no claim she had contributed any personal effort to the accumulation of those assets.

The wife makes two primary arguments to support her view that the husband failed to rebut the presumption that properties acquired during the marriage are marital. First, she notes the bank records reflected that the husband's separate funds passed through checking accounts opened after the marriage. She argues that those two checking accounts are presumed marital and the funds that passed through the accounts are presumed marital. She concludes the husband's own records proved he used marital funds to pay for the properties.

Secondly, the wife notes the husband borrowed money with which to purchase the rental properties. She argues the marital estate became indebted for repayment of the debts because the loans were incurred during the marriage. Thus, she concludes the husband's own records prove he did not purchase the properties with separate funds. She cites Stainback, 11 Va. App. 13, 396 S.E.2d 686, and Wagner v. Wagner, 4 Va. App. 397, 358 S.E.2d 407 (1987).

The rental partners did open new checking accounts during the marriage when they shifted their banking transactions to different banks. However, opening the accounts during the marriage did not convert the funds that passed through the accounts into marital property. All the funds in the accounts were traced to and from separate properties. The accounts were separate from the Ceiling and Floor Shop's accounts. The income from the rental properties was deposited into those accounts, and the balances were used to pay the mortgage debt on the properties. The wife never had access to the rental accounts, and no evidence showed any commingling of funds. Income received from the rental properties was always segregated from marital property.

The husband and his uncle did borrow money during the marriage to purchase additional rental properties. They secured those loans with deeds of trust on the property purchased. They borrowed funds on their signatures alone, and neither of their wives signed any of the loan documents. No marital funds were used to repay the indebtedness on any of the properties.

Property is acquired under the source of funds rule whenever real economic value is created. Moran v. Moran, 29 Va. App. 408, 413-14, 512 S.E.2d 834, 836 (1999). When a party borrows money to buy property, the economic value of the property is created as the debt is paid. The husband proved that the debts incurred to purchase new properties were repaid with income derived from separate property, which was itself separate property. Code § 20-107.3(A)(1). The

fact that the husband incurred the debt during the marriage does not alone make the property they acquired with its proceeds marital. Neither Stainback nor Wagner permits that interpretation.

The trial court found that the contested properties were purchased with income from separate property and the mortgages were paid with this income that the husband maintained separately. When the trial court makes a finding that a party has sufficiently rebutted the presumption of marital property through tracing, "[w]e will not overturn that factual finding unless plainly wrong or without evidence to support it." Bchara v. Bchara, 38 Va. App. 302, 313, 563 S.E.2d 398, 403 (2002). Substantial credible evidence supports the finding. Thus, we affirm the classification of the real property as the husband's separate property.

The wife also contends the trial court erred in classifying the husband's interest in CFS Property, LLC as his separate property. She makes an argument similar to that which she asserted for the rental real estate. She argues that the corporation is presumed marital because it was formed during the marriage and that the husband's financial records do not rebut the presumption.

The husband and his uncle formed the corporation to acquire the real estate where they operated their Ceiling and Floor Shop business. The only function of the corporation was to acquire and hold title to that commercial property. The husband and his uncle were the only owners of the corporation. The husband introduced financial records that he and his uncle each borrowed $6,000 from the shop to capitalize the corporation. The corporation used those funds and the proceeds from a loan secured by the property to purchase it. The husband and his uncle repaid their initial loans from the shop with interest with rents received from the commercial property. All funds used to pay the outstanding balance on the mortgage came from its rental account.

Creating the corporation during the marriage did not make the husband's interest in the corporation marital. The husband and his uncle capitalized it with separate property and kept it and its acquisition separate. The records of this transaction support the husband's testimony explaining it, and they both comport with the established business practices of the husband and his uncle. Proceeds from separate property were used to reinvest in new property and pay the debt incurred to acquire it. The trial court did not abuse its discretion in classifying the husband's interest in the corporation as his separate property.

The wife argues that a deed of partition, in which she released her right, title, and interest in three properties acquired before the marriage, is unenforceable. She argues it is unconscionable and unenforceable because it does not comply with the Premarital Agreement Act. Code § 20-155. She maintains McDavid v. McDavid, 19 Va. App. 406, 451 S.E.2d 713 (1994), requires the deed to comply with that statute. She contends she signed the deed without adequate disclosure as required by the act and thus did not knowingly waive her marital rights to the properties.

Before the marriage, the husband and his uncle took title as joint tenants with right of survivorship and held their undivided interests as equitable separate estates. They continued that practice with the first two properties they acquired after the marriage. Shortly after the marriage, the husband, his uncle, and their respective wives, executed the deed of partition. The deed adjusted title in seven properties so the husband and his uncle held as tenants in common. The deed converted joint tenancies with survivorship to tenancies in common for six properties. The wives of the husband and his uncle released their right, title, and interest in the three properties, acquired before the marriage, that had not been equitable separate estates.

The trial court found the deed was "unambiguous and clear on its face." Its purpose "was to get the properties out of survivorship as joint tenants between" the husband and the uncle.

Their spouses "joined in the deed to convey the properties so that neither man become [sic] owner if the other died. It is clear from the language of the deed . . . [that] title was granted to [the husband] as his separate property." The trial court specifically ruled the deed of partition was enforceable.

A deed is an "instrument of conveyance" that transfers title. A deed "'declare[s] and prove[s] the fact of conveyance.'" Miller v. Reynolds, 216 Va. 852, 855, 223 S.E.2d 883, 885 (1976) (quoting 84 A.L.R. 1008). When a deed is clear and unambiguous, we need not look beyond its four corners to determine what was intended. Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003). Its validity does not rest upon principles of contract law. A deed, unambiguous on its face, is the final agreement between the parties. Davis v. Tazewell Place Assocs., 254 Va. 257, 264, 492 S.E.2d 162, 166 (1997).

The husband and his uncle initially held title to these properties as joint tenants with right of survivorship. They held their interests as sole and separate estates. Upon the death of one of them, the asset would pass to the other. The wife had no claim to her spouse's properties unless the husband survived his uncle and she survived the husband. The deed of partition changed the title between the husband and his uncle to tenancies in common. It favored the wife because the husband's estate would own a one-half interest at his death. The deed was an estate planning device, and its purpose was clear and unambiguous. The trial court properly found it enforceable.

Finally, the wife contends the trial court erred by making a prospective ruling. In decreeing spousal support, the trial court found it was inappropriate for the wife to work outside the home. It explained that once the oldest child reached 16 years old and could drive, it would be appropriate to impute income, and it remarked, "[t]hat will be a change of circumstance."

A trial court's "[d]etermination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur." Keyser v. Keyser, 2 Va. App. 459, 461, 345 S.E.2d 12, 13 (1986). "A trial court may not abrogate its responsibility to determine that a material change of circumstance justifies a modification of child support by entering an order that results in an automatic increase in the support obligation upon the occurrence of future events." Solomond v. Ball, 22 Va. App. 385, 392-93, 470 S.E.2d 157, 160 (1996). See also Jacobs v. Jacobs, 219 Va. 993, 995-96, 254 S.E.2d 56, 58 (1979).

In this case, the final order did not decree an automatic modification of the spousal support award. The comment explained that the trial court based the substantial award of spousal support on the wife's need to transport the children. That duty would likely end in a few months when the oldest child could drive. To the extent the explanation could be construed as a finding of fact binding in future litigation, it would be error. However, we view the words as explanatory not adjudicatory. In addition, the husband acknowledged in argument that he would have to prove a change of circumstance before the support could be reduced.

The husband also appealed from the final decree. In calculating spousal support, the trial court determined the husband's monthly income was $30,211 per month. He maintains the trial court incorrectly determined his income and the wife's expenses which caused it to award too much spousal support. He contends the trial court arbitrarily established his income based on outdated financial information that no longer reflected his true income.

We view the evidence in the light most favorable to the wife, who prevailed on this issue, and determine whether substantial credible evidence supports the trial court's decision. Gray v. Gray, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985). The husband's combined income from his salary and rental properties was $371,064.75, $372,610, and $324,724 in the years 2000, 2001, and 2002. He acknowledges that he earned approximately $300,000 in wages from the Ceiling

and Floor Shop in 2001 and 2002, but he claims his income dropped in 2003. He conceded his total income in 2003 from both wages and rents was $284,045, or $23,670.42 per month.

The wife's evidence demonstrated that gross sales at the Ceiling and Floor Shop increased $200,000 for the fiscal year that ended September 30, 2003. At that point, the business retained $165,413.38 in cash. In previous years, the business distributed any remaining cash to the owners as a bonus and retained no undistributed cash. The husband gave no explanation for retaining cash in 2003.

Credible evidence showed the company distributed bonuses at the end of its fiscal year. The trial court did not abuse its discretion in determining the husband's income had not decreased as he claimed. The trial court has broad discretion to determine spousal support, and this Court will not interfere with that finding absent an abuse of discretion. Joynes v. Payne, 36 Va. App. 401, 423, 551 S.E.2d 10, 20-21 (2001); Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998).

The trial court awarded $7,727 in spousal support. It noted that the award "takes into account the taxes that she will have to pay according to the testimony of Robert Huff, CPA," and that it excluded the mortgage payment due on the marital residence. The trial court also awarded the wife $1,828 in child support pursuant to the guidelines.

The husband contends that the trial court incorrectly calculated the wife's expenses. He maintains it awarded spousal support in excess of the wife's budgeted expenses because it counted expenses for the children twice and included an allowance for mortgage payments in violation of Gamble v. Gamble, 14 Va. App. 558, 577, 421 S.E.2d 635, 646 (1992).

The wife submitted a monthly expense statement of $10,451.06. She acknowledged that it included expenses she incurred for the children and for payment of the mortgage on the marital residence. She also noted that her expense statement did not provide for taxes on future support

payments.  The wife's accountant presented evidence that any support awarded would be taxed at the rate of 31%, 25% federal tax and 6% state tax.  The wife requested $7,727 in spousal support to cover taxes.

The spousal support award does not reflect double counting of child care expenses or mortgage payments.  The trial court specifically stated it excluded the mortgage expense but it included provision for taxes on the amounts received.  Reducing the amount decreed by the proven provision for taxes leaves a figure that refutes any argument that mortgage and child expenses were counted twice.  When allowance is made for payment of taxes, the spousal support fixed by the trial court is supported by the evidence.  We will not reverse a trial court's factual finding if it is supported by the evidence.

For the reasons stated, we affirm the trial court.

<u>Affirmed.</u>