## Richmond

ORVILLE H. TAYLOR v. FRANCES M. TAYLOR.

October 9, 1961

Record No. 5308.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson and Carrico, JJ.

*Robert H. Patterson, Jr.* (*Thomas S. Word, Jr.; James H. Michael, Jr.; McGuire, Eggleston, Bocock & Woods,* on brief), for the appellant.

*John T. Camblos* (*Taylor, Camblos, Deets, Martin & Michie,* on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

Frances M. Taylor (complainant) brought this suit against her husband, Orville H. Taylor (defendant), seeking a divorce on the ground of desertion and praying for the custody of their three children, together with money for their support and alimony for herself, and for other relief.

The court heard the evidence *ore tenus* on September 28, 1960, and entered its decree on October 14, 1960, finding that defendant had willfully deserted complainant on November 15, 1959, and decreeing that the parties be divorced from each other from bed and board. The decree awarded to the complainant the custody of the children, who were three daughters, then of the ages of 16, 15 and 10; gave to the defendant the visiting right described below, and ordered that the defendant pay to the complainant $550 each month, of which $175 per month was for alimony and $375 for the support and maintenance of the children—$125 for each. It was further ordered that defendant continue to make the mortgage payments of $100 each month on their home, which was owned by the complainant and defendant as tenants by the entireties, and which the complainant and the children were given the right to occupy. Defendant was also required to pay certain accounts of the parties totaling $600 and a fee of $750 to the complainant's attorneys.

On this appeal defendant assigns error to the decree only in two

particulars: (1) the sum of $650 per month required to be paid by the defendant [$550 for alimony and support, and $100 on the mortgage] is excessive, considering the earnings of the defendant; (2) the visitation privilege granted the defendant is unreasonably restrictive and without evidence to support it.

■ The legal principles involved are not in controversy. As recently stated in *Oliver* v. *Oliver*, 202 Va. 268, 271, 117 S. E. 2d 59, 62:

"* * * It is the legal and moral duty of a husband to support his wife and family consistent with his financial ability, according to the station in life to which he has accustomed them to live. In fixing the amount of alimony and support money, there must be taken into consideration, along with all of the other circumstances of the particular case, the needs of the wife and children, their ages and physical condition, and the financial ability of the husband to pay."

"In respect to alimony, the general rule is that the income of the husband, however derived or derivable, is the fund from which the allowance is made." And the amount for the maintenance of the children depends "not only on their needs, but on the husband's fortune and station in life, and all the circumstances of the particular case. As to this matter, as in the case of alimony, the court, with all the attainable lights before it, must exercise a sound discretion." *Heninger* v. *Heninger*, 90 Va. 271, 274, 18 S. E. 193, 194-5. *Bray* v. *Landergren*, 161 Va. 699, 703, 172 S. E. 252, 253.

The ability of the husband to pay is determined not necessarily by the amount of his actual earnings, but also by his ability to earn and what, under all the circumstances [including his possessions], will be a fair and just allotment. *Hawkins* v. *Hawkins*, 187 Va. 595, 600-1, 47 S. E. 2d 436, 439.

■ The complainant filed a list of estimated expenditures needed annually for maintenance of herself and the children, including payments on the mortgage, which totaled $9,689.87. The amount allowed by the court was $7,800. The defendant argues that at the date of the decree his gross income was $9,600 a year and that after making necessary deductions for income tax and for traveling expenses as a salesman he would have only $6,804 left, or about $1,000 less than the amount the court ordered him to pay. At the oral argument he submitted a written calculation to show that on the basis of a gross yearly income of $13,000 he would have left only $1,730, or $144 a month for his own needs.

At the time the defendant deserted the complainant he was employed by Piedmont Electric Supply Company, of Charlottesville, where the parties lived. He was the second largest stockholder of the Company. He received a salary of $358 each two weeks, or $9,308 a year. In addition he was paid a bonus of $4,000 for the year ended February 29, 1960. He had received bonuses in prior years for lesser amounts. He had been a member of the United States Air Force Reserve through June 1960, and received from that source $1,000 in 1959. He had borrowed money to buy his stock in Piedmont and his father-in-law had lent him other stock to use as collateral. After he left his wife the father-in-law requested that his stock be returned. Defendant's bank loans and other debts, not including the house mortgage, totaled approximately $13,600. To pay his debts and release the pledged stock he sold his Piedmont stock for $25,436.25, of which $12,048.55 was in deferred payments. He then paid all the debts he owed in the community except the mortgage debt. He testified that his only remaining assets were the balance from the sale of the stock, his interest in the home, his automobile and his personal effects, all of which he estimated to have a value of $11,000 to $12,000.

After selling his stock in Piedmont, defendant concluded that he should seek other employment, which he began to do in the latter part of June, 1960. He secured a job with a concern in Florida as a salesman of copying machines. He was required to furnish his own car and had to do a great deal of traveling. He resigned from the Air Force Reserve because his new location would not permit him to participate in its activities.

Defendant testified that on the basis of his work so far he would earn in his new job around $800 for the month of September, 1960, after deductions for income and Social Security taxes, and he believed he would do as well or better in the succeeding months; that the job had a future to it and he thought he could earn more in it in the long run than he could have earned at Piedmont. His living expenses, he said, were $275 to $300 a month, and his selling expenses $200 a month.

It was stipulated that defendant could go back to work for Piedmont at his former salary plus whatever bonus he might be given, and defendant stated that if he did not go back it would be because he might conclude that he would earn more in the Florida job, and he would prefer to live in Charlottesville if he could earn as much there.

At the time the defendant quit his job with Piedmont in Charlottes-

ville he was earning at the rate of $14,308 a year. This included, however, $1,000 from the Air Force Reserve, which he had ceased to earn at the time of the hearing on September 28, 1960. Nothing in the record refutes defendant's statement that it was necessary for him to resign from this organization. Accepting that to be true, it is fair to base the allowance for alimony and support on the amount of his Piedmont earnings of $13,308, which by the stipulation he could earn if he desired to go back to that job, and which he said he would do unless he concluded he would earn more in the Florida job.

On the record before us we conclude that he should pay to the complainant $450 per month, of which $150 per month shall be for alimony and $300 per month shall be for the support and maintenance of the three children, or the sum of $100 per month for each, payable as provided in said decree; and that defendant shall continue to make the mortgage payments on the house in the sum of $100 per month, in which the complainant and the children may live, as also provided by said decree, making a total of $6,600 per year, or approximately one-half of defendant's earnings as disclosed by the evidence. *Cf. Twohy v. Twohy*, 130 Va. 557, 563, 107 S. E. 642, 644.

This will leave for the defendant after payment of taxes and selling expenses approximately $275 a month, which he testified was the minimum amount of his living expenses. Should the payments heretofore made to the complainant under the decree appealed from exceed the $450 per month here required, there shall be no recovery or credit for the excess, as stipulated by defendant's counsel in the argument.

In the decree appealed from the custody of the children was awarded to the complainant, with the right to the defendant to visit them in their home "to a reasonable extent and at reasonable times and to take them out occasionally for meals or to attend moving picture shows or other forms of entertainment." The defendant made no objection in the court below to this provision of the decree and his assignment of error thereto will not be considered. Rule 1:8; *Richardson* v. *Lovvorn*, 199 Va. 688, 689, 101 S. E. 2d 511, 512. It may be added that his present complaint in this respect is without merit. He has shown no reason for granting him partial custody and no means of taking care of the children in his present abode.

The trial court remains open to the parties to show that changed conditions require change of provisions with respect to custody, maintenance and alimony. Code §§ 20-108, 20-109.

The decree appealed from is modified with respect to the amounts

allowed for alimony and support as herein stated and except as so modified is affirmed.

The defendant shall pay the costs of this appeal and a fee of $400 to complainant's counsel for services in this court.

*Modified and affirmed.*