# Richmond

Alexandra Canavos v. Christos Canavos, also known as Chris Canavos.

January 18, 1965.

Record No. 5816.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*A. Jeffery Bivins* and *Robert M. Yacobi* (*Bivins & Yacobi*, on brief), for the appellant.

*E. Sclater Montague* and *Phillips M. Dowding* (*Montague, Cumming, Watkins & Overton; Martin & Dowding*, on brief), for the appellee.

I'ANSON, J., delivered the opinion of the court.

This appeal is a sequel to the cause of *Canavos* v. *Canavos*, 200 Va. 861, 108 S. E. 2d 359 (1959), in which we reversed a decree awarding the husband a divorce on the ground that the evidence did not support the chancellor's finding that the wife had deserted her husband, and the cause was remanded for the chancellor to award separate maintenance to the wife.

On July 16, 1962, Christos Canavos, appellee herein, filed another suit for divorce from his wife, Alexandra Canavos, appellant herein, on the ground that the parties had lived separate and apart and without interruption for three years, under the provision of § 20-91(9), Code of 1950, 1960 Repl. Vol., as amended by Acts of 1962, c. 288, pp. 413, 414. The chancellor granted appellee a divorce *a vinculo matrimonii*, awarded alimony to the wife, but required the husband to give surety for its payment in lieu of its being a lien on his real estate, and we granted appellant an appeal.

Appellant contends that the chancellor erred in (1) granting Canavos a divorce because he was the party at fault in causing the separation; (2) awarding her insufficient alimony; (3) decreeing that alimony payments were not to be a lien upon the husband's real estate; and (4) requiring insufficient recognizance for the payment of the alimony allowed.

The record shows that the parties separated in August, 1938, without fault on the part of the wife, and since that date they have lived separate and apart without any cohabitation and without interruption.

Canavos owned and operated a restaurant in Newport News, Virginia, from 1938 until June 10, 1960, when he closed the business on the advice of his physician that he needed a rest, and made a visit to Greece. He shipped his 1951 Cadillac automobile to Greece, and while there hired a chauffeur to drive the car, made large

donations to charity, and had spent approximately $10,000 on this trip when he returned to Newport News in October, 1960.

Since returning from his trip, Canavos has not reopened the restaurant because he said he was not financially able to do so. The evidence, however, does not disclose that he has made any effort to rent the restaurant, with or without its equipment, or any part of the second floor of the building, which has approximately eleven rooms. He is not employed and does not have any apparent income, but it was shown that between September 1, 1959, and June 3, 1963, he had paid $23,121 on a note secured by a deed of trust on the property, leaving a balance due of approximately $20,000. No explanation was made as to how he was able to make these payments, except that he had borrowed small sums of money from a friend. He estimated that the market value of the real estate was approximately $60,000, but said that he had liabilities in a like amount.

Mrs. Canavos has lived with one of her sons in Newport News since 1952. She cannot speak, read or write English, and has been unable to find employment.

■ Appellant says that the legislature did not intend, by the 1960 amendment of § 20-91, making uninterrupted separation for three years an additional ground for a divorce *a vinculo matrimonii*, to authorize one spouse to separate from the other for the period specified and then reward the faithless spouse with a divorce for the wrong committed.

Prior to the amendment and reenactment of Code § 20-91, Acts of 1960, c. 108, pp. 121, 122, which added subsection (9) to the section, mere separation was not a ground for divorce in Virginia. The section, as amended by Acts of 1962, c. 288, pp. 413, 414[1], which was in effect at the time the present suit was brought, reads as follows:

"A divorce from the bond of matrimony may be decreed:

      *        *        *        *        *        *        *

"(9) On the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for three years. A plea of res adjudicata or of recrimination with respect to any other provision of this section shall not be a bar to either party obtaining a divorce on this ground."

The precise question presented on this appeal by appellant's first

---

[1] The section was further amended, Acts of 1964, cc. 363, 648, pp. 572, 985, 986, reducing the time of separation from 3 to 2 years.

assignment of error, which involves a construction of the statute, has not heretofore been decided by this Court, although reference was made to the statute in *Todd* v. *Todd*, 202 Va. 133, 141, 115 S. E. 2d 905, 910 (1960). In *Hagen* v. *Hagen*, 205 Va. 791, 139 S. E. 2d 821, decided today, we held that the statute was constitutional, even though it was in effect retroactive.

Appellant urges us to follow the construction placed on a similar statute by the Supreme Court of North Carolina in the case of *Byers* v. *Byers*, 223 N. C. 85, 25 S. E. 2d 466, 470 (1943). There it was said, that "it is not to be supposed the General Assembly intended to authorize one spouse wilfully or wrongfully to abandon the other for a period of two years and then reward the faithless spouse a divorce for the wrong committed, in the face of a plea in bar based on such wrong." Thus it was held that the spouse at fault was not afforded the benefit of the statute.

It is true that the language of the North Carolina statute is quite similar to the first sentence of subsection (9) of § 20-91, but there the similarity ends. The additional language of the Virginia statute, that "A plea of res adjudicata or of recrimination with respect to any other provision of this section shall not be a bar to either party obtaining a divorce on this ground," which was added by the 1962 amendment, evinces legislative intent. Thus it is perfectly manifest from the quoted language of the statute that it was not the intent of the legislature that the party applying for the divorce be wholly without fault, or the innocent spouse. The statute says "on the application of either party," if and when the separation of the parties has continued uninterrupted for three years, and a plea of *res adjudicata* or of recrimination setting up the wrongdoing of the spouse seeking the divorce is not a bar to obtaining a divorce. Obviously, the object of the legislature in amending § 20-91(9), which it was empowered to do under § 63 of the Virginia Constitution, was to grant a divorce to either spouse when they had lived separate and apart without interruption for three years, regardless of fault, on the theory that society will be better served by terminating marriages in law which have ceased to exist in fact. See 17 Am. Jur., Divorce and Separation, § 177, p. 375. For interesting case comments on "Recrimination and Comparative Rectitude," see 20 Wash. & Lee Law. Rev., p. 354.

Moreover, there is much respectable authority contrary to the holding in the *Byers* case. See *Rozboril* v. *Rozboril*, 60 Ariz. 247, 135 P. 2d 221 (1943); *Sandlin* v. *Sandlin*, 289 Ky. 290, 158 S. W. 2d 635

(1942); *Finnegan* v. *Finnegan,* 76 Idaho 500, 285 P. 2d 488, 491 (1955); *Lemp* v. *Lemp,* 62 Nev. 91, 141 P. 2d 212, 216, 148 A. L. R. 1104 (1943); *Parks* v. *Parks,* 73 App. D. C. 93, 116 F. 2d 556; *Wilson* v. *Wilson,* 81 Idaho 375, 341 P. 2d 894, 896 (1959); 27A C. J. S., Divorce, § 42, p. 142; 17 Am. Jur., Divorce and Separation, §§ 179, 180, 181, pp. 376-379; Anno. 166 A. L. R. 498, 503-506.

We hold that, under the provisions of § 20-91(9), as amended, the party at fault may be granted a divorce when the husband and wife have lived separate and apart without cohabitation and without interruption for the time specified in the statute, and the chancellor did not err in awarding Canavos a divorce *a vinculo matrimonii.*

Mrs. Canavos says that the alimony of $17.50 per week allowed by the court below was insufficient when considered in the light of her needs and the ability of her husband to provide for them.

The fixing of alimony or separate maintenance lies within the sound discretion of the chancellor, but in determining the amount of the award he must take into consideration, along with all other facts and circumstances of the particular case, the needs of the wife and the ability of the husband to pay—not necessarily the amount of his actual earnings, but his ability to earn. *Hawkins* v. *Hawkins,* 187 Va. 595, 600, 47 S. E. 2d 436, 439; *Hinshaw* v. *Hinshaw,* 201 Va. 668, 670, 112 S. E. 2d 902, 903, 904.

The evidence clearly shows that the wife is totally unable to provide for her own needs. Prior to the time that Canavos closed his restaurant in June, 1960, he had operated it profitably for more than 22 years. During that time he acquired valuable real estate in addition to the restaurant property, and apparently accumulated a considerable amount of money. It is inconceivable that Canavos would work hard for 23 years and then dissipate all his savings on a trip to Greece, without making some provision for his own future. But accepting as true his statement that he is without funds, there is nothing to prevent him from renting his property and obtaining employment in order to have some visible means of income for his own support and that of Mrs. Canavos. The evidence does not show that Canavos is physically unable to work or that he has even sought employment.

When we consider the needs of Mrs. Canavos, which are far greater than the award of $17.50 per week, and the appellee's ability to pay, based on his ability to earn and what he may receive from rentals, we are of opinion that a fair and proper award of alimony would be $35.00 per week.

██ Under the provisions of § 8-384, as amended, Code of 1950, 1957 Repl. Vol., it was within the sound discretion of the chancellor to provide that alimony and support payments should not be a lien upon the real estate of the party required to make such payments.

The only real estate owned by Canavos at the time this suit was brought was the building which housed his former place of business. The property already has a lien on it. Any further encumbrance could hinder, delay or even prevent its sale at a time when it would be advantageous to sell. It might also result in a forced sale of the property at a figure less than its value, and thereby eliminate it as a potential source of income. These factors were undoubtedly considered by the chancellor and he did not abuse his discretion in determining that it was in the best interest of both parties to order that the alimony not be a lien on the real estate. Moreover, Mrs. Canavos was afforded security to insure the payments to her by the $1,000 bond required pursuant to § 20-114, Code of 1950, 1960 Repl. Vol.

However, in view of our conclusion that the alimony be increased from $17.50 per week to $35 per week, which is to begin from the date of the entry of the decree to be amended in the court below, the bond required should be increased to $3,000, with surety to be approved by the chancellor.

For the reasons stated, that part of the decree awarding Canavos a decree *a vinculo matrimonii* is affirmed, but the cause is remanded to the court below with directions to amend its decree increasing the amount of the alimony and the bond securing the payment thereof, in accordance with the views herein expressed.

*Affirmed in part, reversed in part, and remanded.*