## Richmond

J OHN L EONARD B RAUER, J R. v. J UANITA F OWLER B RAUER.

June 10, 1974.

Record No. 730575.

Present, All the Justices.

*W. Griffith Purcell; Meredith A. House (Purcell, Cherry & Kerns; Cutchins, Wallinger, Christian & House,* on brief), for appellant.

*Ernest H. Dervishian,* for appellee.

Harrison, J., delivered the opinion of the court.

The sole issue involved in this appeal is the amount of alimony that John Leonard Brauer, Jr. should pay his former wife, Juanita Fowler Brauer. The trial court fixed the amount at $500 a month, which the appellant claims is excessive.

A history of this protracted litigation is necessary. In August, 1959 Mrs. Brauer filed her bill for separate maintenance, praying that she be granted the exclusive care and custody of their two infant children, and that Mr. Brauer be enjoined from disposing of his estate. She alleged that appellant was employed at a salary of $4,920 a year and was the life tenant of his mother's estate, which returned a net rental of approximately $10,000 annually. The court allowed Mrs. Brauer $300 a month temporary alimony and awarded her custody of the children. In December, 1959 the court reduced the monthly alimony allowance to $100 and ordered the husband to vacate the home.

Subsequently, in September, 1960, Mrs. Brauer amended her bill and prayed for an absolute divorce from appellant on the grounds of cruelty and desertion. She was granted a divorce on March 31, 1961, and was awarded permanent custody of the two children. Her alimony was fixed at $300 a month, but the court expressly reserved opinion as to permanent alimony pending a hearing. In fixing temporary alimony the court considered rental income which the decree recited that defendant had available to him from his mother's estate.

On April 28, 1961, the court again reserved the matter of permanent alimony and support for further consideration, it appearing that an attempt would be made to procure an accounting of the income to which appellant was entitled. Eighteen months later appellant again gave notice for a reduction of alimony, reciting that his net income was about $325 a month and that he had only realized $348 from his mother's estate since July 14, 1958. He alleged that he was wholly unable to comply with the court's order of March 31, 1961, and that Mrs. Brauer was physically able to work but refused to do so. Although several hearings were held upon the motion for a reduction it was not until November 22, 1967 that the trial court, after reviewing all proceedings formerly had in the suit, concluded that the appellant "[had] not gone far enough in his proof and [had] failed to carry the burden imposed upon him to show a change of circumstances". The court said that the husband had offered no evidence to show the condition of the rental properties at that time, and had made no explanation as to the reason the property was not yielding more income which would inure to his benefit as the life tenant. Although appellant's motion to reduce the alimony was denied, he was granted the right to present additional evidence relating solely to his lack of income from the estate.

Apparently nothing else occurred until August, 1968, when Mrs. Brauer had a show cause order served on Mr. Brauer for his failure to comply with the provisions of the March 31, 1961 decree. On September 25, 1972, and in an effort to ascertain the status of the life estate of the appellant, the court referred the matter to a commissioner in chancery. On the same day the court reduced the alimony to be paid by Mr. Brauer from $300 to $120 a month, both of the children of the parties having attained the age of twenty-one. It provided, however, that if subsequent

events justified such action the court would enter an order for a different amount *nunc pro tunc.*

On March 8, 1973 the commissioner in chancery, having failed to complete his report, was ordered to proceed no further. The court set the matter for an *ore tenus* hearing and directed that the respective parties "appear fully prepared" to present evidence relating to the matters in issue. The hearing was held on March 30, 1973, and resulted in the arrearage due Mrs. Brauer being established at $23,353 as of that date. The court observed that the only significant development in the suit since November 22, 1967 was "the bringing on of these motions for a hearing", and found that appellant had failed to carry the burden of proof to show any change in circumstances to warrant a reduction in the amount of the alimony. It held the appellee had shown a change in her circumstances resulting in an increased need. Comment was again made on the fact that appellant had a life estate in real property assessed at over $200,000 by the City of Richmond. The trial court gave judgment in favor of appellee against appellant for $23,353, and ordered that appellee's alimony be increased to $500 a month effective April 1, 1973. Appellant noted this appeal from the decree of March 30, 1973. He says the court erred in awarding judgment against him; in denying his motion that alimony be reduced; and in granting appellee's motion that alimony be increased. We granted a writ of error limited solely to a consideration of the assignments that relate to the action of the court concerning monthly alimony to be paid by appellant.

The amount of Mr. Brauer's salary is not in controversy. Only his interest in his mother's estate has caused this litigation to become so involved and has generated so much ill will.

Lillie Keck Brauer, mother of appellant, died testate during the year 1958 seized of real estate presently assessed by the City of Richmond at $207,600. Prior to making her will Mrs. Brauer knew that there were domestic problems existing between her son and his wife. It also appears that there was personal animosity between the mother and the daughter-in-law. Mrs. Brauer, Sr. made a will in which she devised all of her property to her son, the appellant, "for life and at his death the residue of said property, if any, to be equally divided between such of my brothers and sisters, as might be living". The will appointed Joe T. Mizell, Jr. executor and "authorized and directed" him to sell

and dispose of any and all of her property upon such terms as the executor, in his sole discretion, deemed proper. The will further authorized the executor to use such portions of the corpus of the estate as might be necessary, in addition to the income, for the maintenance and support of the appellant.

Mr. Mizell testified that the will, in his opinion, set up "in effect a spendthrift trust" for appellant. He denied that he had the authority to provide any funds from the corpus of the estate for Mrs. Brauer's necessities or to provide Mr. Brauer with anything other than "creature comforts", if Mr. Brauer had nothing with which to buy food or necessities.

The total amount of income received by appellant from the executor from 1961 to March, 1973 amounted to $10,608.58, an average of $60.28 a month. Mr. Brauer received no income from the executor between September, 1969 and March, 1973. Mizell's explanation was that much of the property was vacant land; that several of the properties were in transitional sections of the city and were in a poor state of repair; and that taxes and upkeep were expensive.

The record shows that in November, 1962, Mrs. Brauer filed a suit against appellant and Mizell, executor, to subject appellant's interest in the estate of his mother to the payment of the indebtedness thereon, and specifically to satisfy $2,526.29 arrearage in alimony then due her. The suit remains dormant.

While it is improper to construe the will of Lillie Keck Brauer in this proceeding, it is proper, in determining Mr. Brauer's ability to pay, to consider his earning capacity and his financial resources. This includes any property from which he derives or could possibly derive some income. *Canavos* v. *Canavos*, 205 Va. 744, 139 S. E. 2d 825 (1965); *Hinshaw* v. *Hinshaw*, 201 Va. 668, 112 S. E. 2d 902 (1960).

Admittedly, the appellant has a life interest in his mother's estate and is entitled to all the net income therefrom. The mother recognized the possibility that the entire corpus of her estate might be consumed during the lifetime of her son. It is a matter of construction whether the will directed a sale of the property of testatrix leaving the terms of sale within the discretion of the executor, or simply permitted a sale in the discretion of the executor. Also the extent to which, and under what circumstances, the corpus of the mother's estate can be used to supplement the income therefrom for the maintenance

and support of appellant is a matter of construction. Although Mizell was appointed executor of the estate, no trustee was named in the will or has ever been appointed.

At the March 30, 1973 hearing, Mrs. Brauer testified that she had been receiving $120 a month from appellant and $41 a month from the welfare department. She also said that she received some aid from a brother, a sister and a niece. The record further shows that she recovered the sum of $7,000 for personal injuries which she sustained in an automobile accident in 1964. Mr. Brauer said that in 1961 their home was sold and that his former wife received the entire equity of $4,000. He also testified that until recently he had paid the Blue Cross coverage for appellee and their two boys, and that when the boys visited him on weekends he had provided them with food and clothing and had given each an allowance. Mrs. Brauer filed an itemized statement which shows her estimated current living expenses to be $541.25 a month. She said her debts or unpaid bills were $789.55.

Mr. Brauer has at all times during the pendency of this litigation been employed by the State of Virginia. His present gross income is $10,992 per year. After deducting federal and state tax withholding, social security, retirement payments, group insurance and a miscellaneous deduction, his net pay per month is $577.36. The evidence is that Mr. Brauer has remarried, his present wife is working, and she owns the home in which they presently live and on which she makes the payments. Mr. Brauer also filed an itemized statement which shows his estimated current living expenses to be $535.70 a month. This amount includes $120 alimony to appellee and a $93 payment on a State Credit Union loan of $3,000.

An examination of the numerous items constituting the statements of living expenses prepared by both parties show that their estimates are not unreasonable. However, the circumstances of these parties must be faced realistically. Both are 57 years old. Mrs. Brauer has apparently never been employed. This is understandable for her time has necessarily been devoted to raising the two children. Further, she said she had been unable to work since being involved in the automobile accident, and that although she was a good seamstress she has trouble with her eyes which makes sewing difficult. This court has held that a wife who is physically able to work, and has the

capacity to earn, has no right to remain idle at the expense of her former husband. *Babcock* v. *Babcock*, 172 Va. 219, 1 S. E. 2d 328 (1939); *Barnard* v. *Barnard*, 132 Va. 155, 111 S. E. 227 (1922). However, we are not convinced from the record before us that the appellee here is now or will ever be able to make a substantial supplement to her income.

Nevertheless, it is also apparent that, absent any other income, Mr. Brauer, with a take-home pay of $577.36 a month, does not have the ability to pay his former wife $500 a month alimony. From the inception of this case he has argued his inability to contribute more than $120 a month alimony. Payments in this amount have been made through the years and until the arrearage mounted to $23,353. During that time the two children have been raised and educated. One son has died, and the other is no longer dependent upon his parents.

The trial court has had the benefit of numerous *ore tenus* hearings and of evidence not available to us. We will not review the allowances of alimony made prior to April 1, 1973. Appellee claims that the appellant has deliberately refrained from demanding a sale of the properties of the estate, and a reinvestment in high income-yielding securities, so that he would not be in a position to pay a reasonable amount of alimony to her. She says that we have here a recalcitrant husband whose animosity and spitefulness to her have frustrated the orders of the court and deprived the appellee of income which was within the appellant's ability and resources to pay. She testified that her husband had said that the estate could "rot" before she would ever get a dime from it.

While Mr. Brauer denies the charges made by his former wife and says he wants all the income he can get from the estate, the fact is that neither the appellant nor the executor of the Brauer estate appear to have been aggressive in achieving the maximum income·which the estate could produce. Had appellant so desired he could have obtained a construction of his mother's will or attempted other action in an effort to increase his income. He did not take such action. Whether this was because of animosity toward his wife, or because the estate was producing all the income it could earn, is not particularly pertinent to our decision.

Mrs. Brauer is now armed with a final judgment for $23,353 which is a lien on Mr. Brauer's real property, including his life

interest in his mother's real estate. She is in a position to subject this interest to the payment of her judgment, and otherwise invoke the aid of the court to the end that the estate be managed in a manner that will be in the best interest of those entitled thereto. Appellee can now take the action which she has been contending through the years that her husband should have taken to realize the maximum income potential of the estate.

The granting and recording of the judgment places Mr. Brauer's life estate in jeopardy, for a 57-year-old man's life estate in property assessed at $207,600 may not have a value sufficient to satisfy a lien thereon of $23,353. If this be true, his life estate may be of no further value to him. His only remaining interest in or claim on his mother's estate may be by virtue of the clause in her will which gives the executor the authority to invade the corpus of her estate, under certain conditions, for his maintenance and support.

The action to be taken by the respective parties, if any, is a matter within their discretion. However, the finality of the judgment, as a result of action taken by this court, has by indirection substantially resolved the controversy over how much income the appellant should be receiving from his mother's estate. This can no longer be a real factor in considering his ability to pay.

Accordingly, the judgment of the lower court awarding the appellee alimony of $500 a month, effective April 1, 1973, is reversed. This cause is remanded with direction that the trial court reconsider the allowance of alimony to be paid Mrs. Brauer. In making an allowance the court shall consider not only the needs of both Mr. and Mrs. Brauer, but the ability of the appellant to pay, taking into consideration the existence of the judgment lien on his life interest in the estate of Lillie Keck Brauer.

*Reversed and remanded.*