## CIRCUIT COURT OF FAIRFAX COUNTY

Andrea Barnett et al.

v.

Wampouille

Case No. (Chancery) 101542

BY JUDGE JONATHAN C. THACHER

January 7, 1999

This matter came before the Court on June 11, 1998, on Plaintiff's Motion to Compel Compliance with (the Parties') Property Settlement Agreement. Plaintiff's Motion to Award Attorney's Fees, and Plaintiff Sophie Wampouille's (the minor child of the parties) Motion to Award Attorney's Fees. The three remaining issues are (1) whether Mr. Wampouille failed to comply with the conditions of the 1989 Property Settlement Agreement in establishing a college fund (TIAA/CREF) for Sophie and, if so, how much Mr. Wampouille will have to pay to compensate said breach; (2) whether Mrs. Barnett is entitled to attorney's fees in this action and, if so, in what amount; (3) whether Sophie Wampouille is entitled to attorney's fees in this action and, if so, in what amount. After listening to both counsel, reviewing the evidence presented at the hearing, and considering the relevant law, the Court renders this decision.

### The TIAA/CREF Issue

The Court finds as a matter of law that Mr. Wampouille did not abide by the conditions of the 1989 Property Settlement Agreement and breached his fiduciary and contractual obligations to maximize the return on the investment. The 1989 Property Settlement Agreement provided, *inter alia*, in lieu of a marital distribution to the Mother, the Father was to transfer the value of the TIAA/CREF retirement account (valued at $5,392.38 in 1989) to a

separate account intended "for the payment of the [child's] college education expenses." In September 1989, Mr. Wampouille established with TIAA/CREF two annuities which pay, at present, modest quarterly sums into a bank account at First Union National Bank at Ballston. By the end of 1989, the total accumulation of the TIAA/CREF fund was $7,734.57. That sum, which was comprised of the TIAA sum of $3,250.96 and the CREF sum of $4,483.61, was used to establish the annuity from which meager dividends are paid to a trust account, solely administered by Mr. Wampouille, at First American Bank (now First Union Bank). These figures are taken from Plaintiff's Exhibit B which was admitted into evidence at the hearing on June 11, 1998.

The Court finds that Mr. Wampouille first breached the agreement by not transferring the complete value of his TIAA/CREF fund to the benefit of his daughter. TIAA/CREF documentation shows the beneficiary of the annuities to be Sophie Wampouille, with Mr. Wampouille retaining the power to change beneficiaries and, after twenty years, of having the payments revert to him for the rest of his life. With his residuary rights still intact after eight years, and possessing the power to change beneficiaries, Mr. Wampouille has not transferred the value of the account to his daughter's benefit, as required in the Property Settlement Agreement.

The Court also concludes that Mr. Wampouille failed to maximize the annuity's return established through the TIAA/CREF fund. According to Plaintiff's Exhibit B, "TIAA/CREF — Contributions Summary," the return for the $7,734.57 investment at First Union National Bank at Ballston from 1989 to 1998 is $5,631.55. This figure is achieved by adding the returns from the TIAA from 1989 to 1998 ($2,713.32), plus the returns from the CREF from 1989 to 1998 ($2,336.82), plus interest from 1989 to 1998 ($581.41).

If, however, the $7,734.57 investment had a more fair return of 5%, as Plaintiff suggests in Exhibit B, then the return for the same time period of the TIAA/CREF investment would be $12,118.89. This is a difference of $6,487.34. Mr. Wampouille's fiscally irresponsible actions in lost financial opportunity drastically impacts on the college fund's long term viability to meet Sophie Wampouille's higher educational needs. It is the opinion of this Court that this investment irresponsibility can be corrected only by Mr. Wampouille's removal as a trustee, by the liquidation of the TIAA/CREF annuity, by the replacement of the entire value in the TIAA/CREF of $7,734.57 into a new, high interest-bearing account, and by Mr. Wampouille making up any difference or loss in the $7,734.57 occasioned by said liquidation. Furthermore, Mr. Wampouille is responsible for paying $6,487.34 to the new trust account which is the difference between the present return of

$5,631.55 and $12,118.89 had fiscally responsible management been undertaken from the beginning in 1989.

### Attorney's Fees for Andrea Barnett

On March 14, 1997, the Defendant filed a Petition to Re-Open File and to Enforce Visitation and to Modify Custody. This petition was tenaciously litigated by Mr. Wampouille and his attorney for about one year. It is the opinion of this Court that the Defendant's petition to change custody was frivolous when filed. The petition was filed without just cause eighteen months after this Court, specifically Judge Stanley P. Klein, had ruled on issues directly related to visitation and custody. In the intervening eighteen months, no change of circumstances occurred to justify judicial review or reconsideration of Judge Klein's Order, and, this fact was known, or should have been known by the Defendant and his counsel.

Defendant's ten page petition, filed without just cause, was replete with unsupported allegations and abject exaggerations. Nevertheless, Plaintiff was compelled to retain counsel to defend against Defendant's meritless petition. An itemization of total fees and expenses was submitted by Plaintiff's counsel to the Court as "Exhibit A" to Plaintiff's Motion to Award Attorney's Fees filed on March 6, 1998. However, no exhibits regarding attorney's fees for Andrea Barnett were submitted into evidence at the hearing on June 11, 1998. The only itemization of attorney's fees submitted into evidence by the Plaintiff at the June 11, 1998, hearing was "Plaintiff's Exhibit B1" which is an itemization of fees for services rendered on Sophie Wampouille's behalf. Moreover, there is nothing in evidence as to Plaintiff's attorney's fees and expenses from March 1, 1998, through June 11, 1998, the hearing date. It is the Court's decision to award Mrs. Barnett attorney's fees incurred from March 7, 1997, to June 11, 1998, in defending Mr. Wampouille's frivolous claim. Counsel are ordered to pick a date that is mutually acceptable and to set a 9:00 a.m. hearing with me to determine these attorney's fees. Counsel are further requested if possible to stipulate as to the authenticity of the Plaintiff's attorney's fees itemization, not as to its reasonableness. The exact amount of attorney's fees owed by Mr. Wampouille to Mrs. Barnett will be determined at this hearing.

### Attorney's Fees for Sophie Wampouille

The Court also awards attorney's fees to Sophie Wampouille for her Guardian Ad Litem's defense of Mr. Wampouille's claim. See *L.C.S. v. S.A.S.*,

19 Va. App. 709, 453 S.E.2d 580 (1995) (It is axiomatic that an award of attorney's fees and costs in a domestic relations cases rests within "the sound discretion of the court"). The filing of Mr. Wampouille's claim compelled Mrs. Barnett to obtain separate counsel for her twelve year old daughter as a result of Defendant's complainants that Sophie's interests conflicted with Mrs. Barnett's interests. At the hearing on June 11, 1998, Plaintiff submitted "Plaintiff's Exhibit B1" which is an itemization of fees and services rendered by Jeffrey T. Twardy, Esq., as Guardian Ad Litem for Sophie Wampouille for the period of May 8, 1997, to June 4, 1998. This exhibit was entered into evidence on June 11, 1998. The exhibit indicates that Sophie Wampouille incurred legal expenses of $7,570.00 defending Mr. Wampouille's claim. The Court orders Mr. Wampouille to pay $7,570.00 to Sophie Wampouille for her attorney's fees.

### Conclusion

For the foregoing reasons, the Court orders: (1) that the TIAA/CREF annuity be liquidated; (2) that Mr. Wampouille be removed as a trustee to the account; (3) that the entire value in the TIAA/CREF of $7,734.57 be replaced into a new, high-interest bearing account; (4) that Mr. Wampouille make up any difference or loss in the $7,734.57 occasioned by the liquidation; (5) Mr. Wampouille is to pay to the Plaintiff, Mrs. Barnett, $6,487.34 for the TIAA/CREF investment; and (6) Mr. Wampouille is to pay $7,570.50 in and for attorney's fees for Sophie Wampouille. This makes the total due and owing from Mr. Wampouille (excluding Mrs. Barnett's attorney's fees) $4,057.84.

### August 10, 2000

This matter came before the Court on July 21, 2000, on Plaintiff's Motion for Attorneys' Fees on Appeal. For the reasons set forth below, the Motion for Attorneys' Fees is granted.

The Plaintiff in this case seeks attorney's fees expended in defense of an appeal brought by the Defendant. The Court of Appeals of Virginia stated in its opinion that the appeal was "without merit" and summarily affirmed this Court's rulings according to Rule 5A:27. In the Itemized Statement of Costs, the Court of Appeals stated:

taxing of costs in this proceeding is not to be considered a determination of an award of attorney's fees or other costs for services

rendered or expenditures made which any party may be entitled in an award by the trial court under the provisions of Code §§ 20-99 and 20-103.

The Court of Appeals found the appeal of this case "without merit." Therefore, attorneys' fees to defend this meritless appeal are justified. Plaintiff submitted a billing and itemization of attorney's fees and costs of $5,313.75 incurred by the appeal, minus the award of costs of $171.75 by the Court of Appeals. This Court finds those fees reasonable. Accordingly, this Court awards Plaintiff $5,142.00 in attorneys' fees and costs payable by November 8, 2000.